## I. Resolutions on Public Hearing

**1. RS2026-2070**

A resolution exempting Vibes Bar & Lounge, located at 114 28th Avenue North from the minimum distance requirements for obtaining a beer permit pursuant to Section 7.08.090.E of the Metropolitan Code.

Analysis

This resolution approves an exemption from the minimum distance requirements for obtaining a beer permit for Vibes Bar & Lounge, located at 114 28th Avenue North.

The Metropolitan Code of Laws prevents a beer permit from being issued to any establishment located within 100 feet of a religious institution, school, park, daycare, or one- or two-family residence. However, several exceptions exist to the distance requirements. For example, facilities within the Urban Service District separated from these protected establishments by state or federal four-lane highways are exempt, as are retailer on-sale beer permit holders in MUL districts and events catered by holders of caterers' permits.

This exemption is requested because the business is located within 100 feet of a park.

Additionally, the Code provides a mechanism to exempt (a) restaurants or (b) any retail food store from Metro's minimum distance requirements, allowing such facilities to obtain beer permits upon the adoption of a resolution by the Council. Restaurants are no longer required to have state on-premises liquor consumption licenses in order to obtain such exemption.

A public hearing must be held by the Council prior to voting on resolutions brought under Section 7.08.090(E).

**Sponsors:** Taylor

## J. Bills on Public Hearing

**2. BL2026-1314**

An ordinance amending certain sections and subsections of Chapters 2.104, 6.26, 13.32, 17.20, 17.24, 17.28, and 17.36 of the Metropolitan Code of Laws to correct typographical errors, incorrect references, redundancies, and other minor errors. (Proposal No. 2026Z-008TX-001).

Analysis


Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 1 of 37 PageID #: 93

This ordinance amends Titles 2, 6, 13, 15, and 17 of the Metropolitan Code of Laws to make numerous changes within the Zoning Code related to spelling corrections, accidental paragraph duplication, references to other sections of the Code, departmental name updates, and other typographical errors. The proposed amendments to the Code are housekeeping in nature. There are no changes to any requirements or how the Code is to be interpreted.

This item was approved by the Planning Commission at its April 9, 2026, meeting (8-0).

**Sponsors:** Horton and Evans-Segall

**3. BL2026-1360**

An ordinance amending Chapter 17.28 of the Metropolitan Code of Laws to amend regulations on underground utilities (Proposal No. 2026Z-010TX-001).

Analysis

This ordinance amends Subsection 17.28.103.A of the Metropolitan Code of Laws to require underground utilities for the following developments that propose new public or private streets:

- Any application for a new or amended preliminary planned unit development
- Any new or amended preliminary SP plan
- Any new or amended preliminary urban design overlay district
- Any new or revised preliminary subdivision plat; and in the case of a proposed revised preliminary plat, these provisions shall only apply to those plats deemed to be a major modification by the executive director of the metro planning department, as provided in the Subdivision Regulations.

Currently, the Code only requires underground utilities for residential developments proposing new public or private streets. The ordinance proposes to expand this underground utility requirement to all developments, regardless of land use classification.

The remainder of Section 17.28.103 of the Code is not being amended and describes the regulations, exceptions, exemptions, and variance process for the required underground utilities.

This item was approved by the Planning Commission with a substitute at its June 25, 2026, meeting (6-0).

**Sponsors:** Styles and Evans-Segall

**4. BL2026-1361**

An ordinance to amend Chapter 17.37 of the Metropolitan Code of Laws to establish an East Bank Design Review Committee within the Downtown Code (“DTC”), all of which is described herein (Proposal No. 2026Z-011TX-001).

Analysis

This ordinance amends Chapter 17.37 of the Metropolitan Code of Laws to Establish an East Bank Design Review Committee (EB DRC) within the Downtown Code (DTC) for the East Bank and Wasioto Bend subdistricts of the DTC.



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 2 of 37 PageID #: 94

Currently, the DTC has an eight-member Design Review Committee (DTC DRC), subject to the rules and procedures adopted by the Planning Commission. Four of these members are nominated by the Chamber of Commerce, the Civic Design Center, the Downtown Partnership, and the Urban Residents Association, with each organization nominating one member subject to confirmation by the Planning Commission. The remaining four members are directly appointed, with one member each chosen by the Mayor, the Vice-Mayor (on behalf of the Metro Council), the Historic Commission, and the Planning Commission. All members of the DTC DRC are required to be design professionals, except for the Chamber of Commerce member and the Downtown Partnership member, with a degree or significant experience in a design related field such as architecture, landscape architecture, urban design, or urban planning. The DTC requires the DTC DRC to review/approve DTC concept plans for all new development projects, with recommendations provided by the Planning Department and the Nashville Department of Transportation and Multimodal Infrastructure. The DTC DRC also reviews/approves requests for modifications of DTC standards and requirements that the DTC empowers the DTC DRC to grant.

The ordinance proposes to create a separate design review committee, to be known as the East Bank Design Review Committee (EB DRC) to carry out the required review/approval of DTC concept plans and modifications of DTC standards and requirements for the two DTC subdistricts located east of the Cumberland River, East Bank and Wasioto Bend. The EB DRC would consist of eight members. Three members would be appointed, including one by the Mayor, one by the Metropolitan Council, and one by the Planning Commission. Five members would be nominated by non-governmental organizations subject to confirmation by the Planning commission, including one by the East Bank neighborhood association, one by the Cayce Place Resident Association, one by the Urban Land Institute, one by the Nashville Area Chamber of Commerce, and one by the Civic Design Center. The members nominated or appointed by the Mayor, Metropolitan Council, Planning Commission, Urban Land Institute, and Civic Design Center would be required to be design professionals with a degree or experience in architecture, landscape architecture, urban planning, or urban design.

This item was approved by the Planning Commission with a substitute at its June 25, 2026, meeting (6-0).

**Sponsors:** Benedict, Capp, Kupin and Evans-Segall

**44. BL2026-1391**

An ordinance amending Title 17 of the Metropolitan Code of Laws, to add various new data center uses and related definitions and conditions to the Zoning Code (Proposal No. 2026Z-012TX-001).

Analysis

This ordinance amends Title 17 of the Metropolitan Code of Laws, the Zoning Code, to establish a comprehensive regulatory framework for data centers, including: creating five data center use types; adding associated definitions to the Zoning Code; assigning each new data center use to various zoning as either an accessory use (A), conditionally permitted use (PC), or a special exception (SE); creating new conditions for each data center use; and creating



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 3 of 37 PageID #: 95

new application and continuing compliance requirements for data centers.

Currently, data center is not a separately classified use within the Zoning Code. The Zoning Administrator classifies data centers as a general office use. The general office use is permitted by right (P) in the MUL, MUG, MUI, OL, OG, OR20 through OR40, ORI, CL, CS, CA, CF, DTC North, DTC South, DTC East, DTC West, DTC Central, SCC, SCR, IWD, and IR zoning districts. The general office use is permitted with conditions (PC) in the MUN, CN, SCN, and IG zoning districts. The only condition on the general office use within zoning districts where it is permitted conditionally is that the use shall be limited to two thousand five hundred square feet of gross floor area per establishment.

The ordinance proposes establishing defined data center uses, conditions for each use, and permitting requirements and ongoing compliance reporting. “Data center” would be defined as “a physical room, building, or facility primarily used for housing and operating computer systems and associated equipment, including servers, data storage and processing systems, and accessory infrastructure such as cooling systems, power generators, electrical substations, and network hardware. Data center includes “data center - accessory”, “data center - small”, “data center - medium”, “data center - large”, and “data center - campus”. The square footage of a data center shall include the total square footage of each floor in the data center development, the square footage of any supporting uses, and the square footage of any additional exterior equipment, such as substations, electrical yards, mechanical yards, and all other exposed equipment, located within the property boundaries.” Five data center uses would be established including “Data center - accessory”, “Data center - small”, “Data center - medium”, “Data center - large”, and “Data center - campus”.

The “data center - accessory” use would be an accessory use limited to no more than 5,000 square feet and/or a maximum utilization capacity of 1MW of electricity. Additionally, the principal use would be required to have more square feet than the accessory data center use. The “data center - accessory” use is proposed to be permitted as an accessory use in the MUG, MUI, OG, ORI, CS, CF, DTC North, DTC South, DTC West, DTC Central, DTC East, SCR, IWD, IR, and IG zoning districts. Accessory data centers would have closed loop cooling and ventilation, location requirements for external equipment, generator testing and use restrictions, and sound limits capped at sixty-five (65) decibels (dB) during the daytime (7:01 a.m. to 9:59 p.m.) and fifty-five (55) decibels (dB) during the nighttime (10:00 p.m. to 7:00 a.m.) as measured from any property line.

The “data center - small” use would be limited to no more than 20,000 square feet and/or a maximum utilization capacity of 5MW of electricity and does not utilize a dedicated power substation. Additionally, a small data center could be located within a mixed use structure (up to 30%) that does not contain any residential units. The “data center - small” use is proposed to be permitted with conditions (PC) in the CS, CF, DTC South, DTC West, DTC Central, IWD, IR, and IG zoning districts. Small data centers would be restricted from locating on parcels that are located within 100 feet of parcels containing a residential use, daycare home, daycare center, religious institution, community education use, park, zoo, or other data center. Additionally, design standards are proposed that would regulate the design of building facades,



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 4 of 37 PageID #: 96

materials used, rooftop screening, and building height. Operational standards proposed include a prohibition on light trespass onto surrounding properties, closed loop cooling and ventilation requirements, location requirements for external equipment, generator testing and use restrictions, and sound limits capped at sixty-five (65) decibels (dB) during the daytime (7:01 a.m. to 9:59 p.m.) and fifty-five (55) decibels (dB) during the nighttime (10:00 p.m. to 7:00 a.m.) as measured from any property line.

The “data center - medium” use would be limited to between 20,000 and 99,000 square feet and/or a maximum utilization capacity between 5MW and 20MW of electricity and may utilize a dedicated power substation. The “data center - medium” use is proposed to be permitted with conditions (PC) in the IWD, IR, and IG zoning districts. Medium data centers would be restricted from locating on parcels that are located within 500 feet of parcels containing a residential use, daycare home, daycare center, religious institution, community education use, park, zoo, or other data center. Additionally, design standards are proposed that would regulate the design of building facades, materials used, rooftop screening, and building height. Operational standards proposed include a prohibition on light trespass onto surrounding properties, closed loop cooling and ventilation requirements, location requirements for substations and other external equipment and storage, generator testing and use restrictions, and sound limits capped at sixty-five (65) decibels (dB) during the daytime (7:01 a.m. to 9:59 p.m.) and fifty-five (55) decibels (dB) during the nighttime (10:00 p.m. to 7:00 a.m.) as measured from any property line.

The “data center - large” use would be limited to between 100,000 and 499,000 square feet and/or a maximum utilization capacity between 20MW and 100MW of electricity and utilizes a dedicated power substation. The “data center - large” use is proposed to be permitted as a special exception (SE) in the IR, and IG zoning districts. Uses permitted by special exception require approval from the Board of Zoning Appeals (BZA), which includes a public hearing. Large data centers would be restricted from locating on parcels that are located within 2,640 feet (1/2 mile) of parcels containing a residential use, daycare home, daycare center, religious institution, community education use, park, zoo, or other data center. Additionally, design standards are proposed that would regulate the design of building facades, materials used, rooftop screening, and building height. Operational standards proposed include a prohibition on light trespass onto surrounding properties, closed loop cooling and ventilation requirements, location requirements for substations and other external equipment and storage, generator testing and use restrictions, and sound limits capped at sixty-five (65) decibels (dB) during the daytime (7:01 a.m. to 9:59 p.m.) and fifty-five (55) decibels (dB) during the nighttime (10:00 p.m. to 7:00 a.m.) as measured from any property line. Additionally, large data centers could earn a height bonus to increase the maximum allowable height from 75 feet to 150 feet if such additional height conforms to the permitted height and height control plane of the applicable zoning district the data center is located within if the data center includes the use of renewable energy sources to offset at least 50% of the data center’s total energy use. Renewable energy sources would include solar panels, on-site solar farm, small wind energy facilities, waste heat recovery, and other renewable energy sources.

The “data center - campus” use would be a geographically contiguous development of one or



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 5 of 37 PageID #: 97

multiple buildings utilized as a data center and all associated supporting structures and uses, including a dedicated power substation, built across one or multiple phases totaling at least 500,000 square feet and/or has a maximum utilization capacity greater than 100MW. The "data center - campus" use is proposed to be prohibited within Davidson County and not permitted within any zoning district.

The ordinance proposes to create permitting requirements and ongoing compliance reporting that all data center developers and operators of data centers permitted after the adoption of this legislation would have to conform to as part of the zoning permit process. These permitting requirements would include written confirmation from NES that they have agreed to provide electricity to the proposed data center, written confirmation from the applicable water utility that there is sufficient water/sewer capacity to serve the proposed data center, a noise impact assessment, a water consumption and sustainability plan, an energy consumption and sustainability plan, a lighting plan, a transmission line impact assessment, and any additional information requested by a reviewing department or agency. Additionally, an annual compliance report showing any changes to, and continuation of all, assessments submitted as part of the zoning permit approval process and demonstrate compliance and monitoring of all application requirements and conditions of zoning would be required to be submitted to the Zoning Administrator each year.

This item was approved by the Planning Commission with a substitute at its June 25, 2026, meeting (6-0).

**Sponsors:** Horton, Porterfield, Gadd, Huffman, Welsch, Toombs, Preptit, Benedict, Spain, Parker, Weiner, Vo, Bradford, Kupin, Ewing, Johnston, Sepulveda, Evans, Cortese, Hill, Allen, Taylor, Capp, Gamble, Gregg, Suara, Harrell and Druffel

## L. Resolutions

**47. RS2026-2071**

A resolution approving an application for an Arts Build Communities grant from the Tennessee Arts Commission to the Metropolitan Government, acting by and through the Office of the Mayor, for a new mural as part of the Let's Color Nashville 2027 program to support art projects that broaden access to the arts experience and enhance the sustainability of asset-based cultural enterprises.

Analysis

This resolution approves an application for an Arts Build Community grant thought the Tennessee Arts Commission to the Office of the Mayor. The grant would be for a new mural as part of Let's Color Nashville 2026.

If awarded, the grant amount would be $5,000.

**Sponsors:** Toombs, Vo, Allen, Gadd, Welsch, Ewing and Kupin

**48. RS2026-2072**

A resolution approving the election of certain Notaries Public for Davidson County.

Analysis

This is a routine resolution approving the election of notaries public in accordance with state law.

**Sponsors:** Cash

**49. RS2026-2073**

A resolution approving amendment three to a Child and Family Intervention Services grant from the Tennessee Department of Children's Services to the Metropolitan Government, acting by and through the Davidson County Juvenile Court, to provide community-based case management and probation services to children at high risk of state custody.

Analysis

This resolution approves the third amendment to a Child and Family Intervention Services grant from the Tennessee Department of Children's Services to the Davidson County Juvenile Court. This grant, approved pursuant to Resolution No. RS2023-2102, provides funding for six probation officers operating in various divisions of the court who will provide services to at-risk youth in order to maintain or reduce the number of youths committed to state custody.

The first amendment approved pursuant to Resolution No. RS2025-1178 increased the amount of the grant by $434,333 from $434,333 to $886,666 and extended the end date to June 30, 2025. The second amendment, approved pursuant to Resolution No. RS2025-1178, increased the amount of the grant by $434,333 from $886,666 to $1,302,999 and extended the contract term to June 30, 2026.

The proposed amendment would increase the amount of the grant by $434,333 from $1,302,999 to $1,737,332 and extends the end date to June 30, 2027.

**Sponsors:** Toombs, Huffman, Gadd, Welsch and Kupin

**50. RS2026-2074**

A resolution accepting a Tennessee Certified Recovery Court Program grant from the Tennessee Department of Mental Health and Substance Abuse Services to the Metropolitan Government, acting by and through the State Trial Courts, to provide treatment services to non-violent offenders including intensive court supervision, mandatory drug testing, substance use treatment services, and other social services as an alternative to incarceration.

Analysis

This resolution accepts a grant from the Tennessee Department of Mental Health and Substance Abuse Services to the Davidson County General Sessions Court. The grant will fund Tennessee Certified Recovery Court Program services including court supervision, mandatory drug testing, and substance abuse treatment as an alternative to adjudication or incarceration.


Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 7 of 37 PageID #: 99

The grant award is for an amount not to exceed $1,762,000 with no local cash match. The grant term is effective July 1, 2026, and would expire June 30, 2027.

**Sponsors:** Toombs, Huffman, Allen, Gadd, Welsch, Hill, Gamble and Kupin

**51. RS2026-2075**

A resolution approving amendment two to a Community Correction Services grant from the Tennessee Department of Correction to the Metropolitan Government, acting by and through the State Trial Courts, to divert eligible offenders from the Tennessee prison system by providing community-based supervision and treatment services through the Davidson County Community Corrections Program.

Analysis

This resolution approves the second amendment to a Community Corrections Services grant from the Tennessee Department of Correction to the State Trial Courts to divert eligible offenses from the Tennessee prison system by providing community-based supervision and treatment services.

The grant contract approved in Resolution No. RS2025-1352 funds the administration of the Davidson County Community Corrections Program. The first amendment, approved in Resolution No. RS2025-1418, corrected the out-on-bond monthly home visit requirements in the community corrections supervision program standards from one home visit to zero home visits.

The proposed amendment would increase the grant funds by $2,950,860 from $1,475,430 to $4,426,290, extending the contract term by two years from June 30, 2026, to June 30, 2028. The amendment also specifies permitted uses for any residual payroll savings and states that any salary adjustments are subject to availability of funds.

**Sponsors:** Toombs, Huffman, Gadd, Welsch and Kupin

**52. RS2026-2076**

A resolution authorizing the Metropolitan Government to settle opioid-related claims with Publix Super Markets, Inc.

Analysis

This resolution settles litigation related to the opioid epidemic with Publix Super Markets, Inc.

The Metropolitan Government ("Metro") filed suit in 2017 in *Metropolitan Gov't v. Purdue Pharma, L.P.*, et al., in federal district court. That lawsuit became part of nationwide multi-district litigation and resulted in the settlement at issue in the proposed resolution.

Resolution No. RS2021-1235 approved a settlement with the three largest pharmaceutical distributors AmerisourceBergen Corporation, Cardinal Health, Inc., and McKesson Corporation, and manufacturer Janssen Pharmaceuticals, Inc., and its parent company Johnson & Johnson.



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 8 of 37 PageID #: 100

In November 2021, the Metropolitan Council ("the Council") approved Metro's participation in the agreement between the State of Tennessee and its political subdivisions (including Metro) as to how settlement funds will be distributed. Metro has received millions of dollars related to this settlement and will continue to receive funds for the next several years. The Council has approved various settlements in line with that agreement in 2023, 2024, and 2025.

The proposed resolution approves an $86,092.99 settlement with Publix Super Markets Inc. This settlement would occur directly through the Metropolitan Government, and not through the settlement agreement with the State of Tennessee and its political subdivision.

The Metropolitan Department of Law recommends the Council approve the amended settlement agreement. The Metropolitan Public Health Department will oversee the receipt and expenditure of funds Metro received related to the opioid-abatement-related settlements.

*Fiscal Note: Metropolitan Government will receive a payout from a proposed settlement from Publix Super Markets, Inc. in the amount of $86,092.99 as part of the National Prescription Opiate Litigation, MDL No. 2804.*

**Sponsors:** Toombs, Huffman and Gadd

**53.** **RS2026-2077**

A resolution authorizing the Metropolitan Mayor to submit the 2026-2027 Annual Update to the 2023-2028 Consolidated Plan for Housing and Community Development to the U.S. Department of Housing and Urban Development.

Analysis

This resolution authorizes the Mayor to submit the 2026-2027 Annual Update to the 2023-2028 Consolidated Plan for Housing and Community Development to the U.S. Department of Housing and Urban Development (HUD).

The five-year consolidated plan is prepared by the Metropolitan Development and Housing Agency (MDHA) and is to be administered by MDHA as authorized per Resolution No. R94-1326.

The public comment period for this annual update was held between May 1 and May 30, 2026. An in-person and a virtual public hearing was held on May 14, 2026. HUD requires these plans from local governments seeking federal assistance through Community Development Block Grants (CDBG), the HOME Investment Partnerships program (HOME), the Emergency Solutions Grant program (ESG), and Housing Opportunities for Persons with AIDS (HOPWA).

The allocations for the 2026 Program Year (June 1, 2026, through May 31, 2027) as follows:

| | Annual Allocation | Estimated Program Income | Prior Year Resources | Total |
|---|---|---|---|---|
| CDBG | $5,434,241.00 | $947,277.00 | $0 | $6,381,518.00 |
| ESG | $451,895.00 | $0 | $0 | $451,895.00 |

| | | | | |
|---|---|---|---|---|
| HOME | $2,492,989.38 | $566,048 | $0 | $3,059,037.38 |
| HOPWA | $2,587,853.00 | $0 | $0 | $2,587,853.00 |
| Total | $10,966,978.38 | $1,513,325.00 | $0 | $12,480,303.38 |

The priorities of the Consolidated Plan include the following:

- Increase the number of decent, safe affordable units and help low and moderate income (LMI) households access affordable housing.
- Preserve existing affordable housing units and help LMI households retain housing.
- Support facilities and services for the homeless and persons with HIV/AIDS.
- Provide essential services to LMI and vulnerable populations.
- Revitalize distressed neighborhoods and underserved areas through public facility and infrastructure improvements.
- Undertake grant management, planning, and other eligible administrative tasks under CDBG, HOME, ESG, and HOPWA.

The resolution expressly withholds any approval for the expenditure of CDBG funds for capital improvement projects. All requested expenditures for capital improvement projects are subject to future approval of the council by resolution. Also, detailed project plans for capital improvements must be on file in the Community Development Department of MDHA at the time of the filing of such resolution.

CDBG, HOME, ESG, and HOPWA funds cannot be used for any property acquisition for which the power of eminent domain is utilized by MDHA, which is restricted by federal law.

**Sponsors:** Toombs, Horton and Allen

**54.** **RS2026-2078**

A Resolution approving the activities and improvements eligible for tax increment financing in the Arts Center Redevelopment Plan.

Analysis

This resolution approves the activities and improvements eligible for tax increment financing in the Arts Center Redevelopment Plan.

The Metropolitan Development and Housing Agency (“MDHA”) oversees 11 Redevelopment Districts in Nashville, including the Arts Center Redevelopment Plan.

Section 5.06.060 of the Metropolitan Code of Laws directs MDHA to make periodic assessments of the activities and improvements eligible for tax increment financing under each Redevelopment Plan. MDHA held nine meetings and conducted surveys of the property owners and citizens of Davidson County to gather resident and owner input for priorities in the Redevelopment Districts.

This resolution provides that MDHA has completed an assessment of the activities and



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 10 of 37 PageID #: 102

improvements for tax increment financing in accordance with Section 5.06.060 of the Metropolitan Code. The priorities in the Arts Center Redevelopment Plan are: affordable housing; projects directly improving transit infrastructure including greenways and pedestrian ways; all types of public infrastructure; and preservation of historically significant structures.

Pursuant to Section 5.06.060 of the Metropolitan Code of Laws, for an assessment to be complete, the Council must agree on the activities and improvements that are eligible for tax increment financing under the plan. The Council may indicate agreement by the passage of a resolution approved by 21 votes.

**Sponsors:** Vo, Kupin, Toombs, Horton and Allen

**55. RS2026-2079**

A Resolution approving the activities and improvements eligible for tax increment financing in the Bordeaux Redevelopment Plan.

Analysis

This resolution approves the activities and improvements eligible for tax increment financing in the Bordeaux Redevelopment Plan.

The Metropolitan Development and Housing Agency ("MDHA") oversees 11 Redevelopment Districts in Nashville, including the Bordeaux Redevelopment Plan.

Section 5.06.060 of the Metropolitan Code of Laws directs MDHA to make periodic assessments of the activities and improvements eligible for tax increment financing under each Redevelopment Plan. MDHA held nine meetings and conducted surveys of the property owners and citizens of Davidson County to gather resident and owner input for priorities in the Redevelopment Districts.

This resolution provides that MDHA has completed an assessment of the activities and improvements for tax increment financing in accordance with Section 5.06.060 of the Metropolitan Code. The priorities in the Bordeaux Redevelopment Plan are: affordable housing; projects directly improving transit infrastructure including greenways and pedestrian ways; all types of public infrastructure; and preservation of historically significant structures.

Pursuant to Section 5.06.060 of the Metropolitan Code of Laws, for an assessment to be complete, the Council must agree on the activities and improvements that are eligible for tax increment financing under the plan. The Council may indicate agreement by the passage of a resolution approved by 21 votes.

**Sponsors:** Toombs, Horton and Allen

**56. RS2026-2080**

A Resolution approving the activities and improvements eligible for tax increment financing in the Central State Redevelopment Plan.

Analysis



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 11 of 37 PageID #: 103

This resolution approves the activities and improvements eligible for tax increment financing in the Central State Redevelopment Plan.

The Metropolitan Development and Housing Agency ("MDHA") oversees 11 Redevelopment Districts in Nashville, including the Central State Redevelopment Plan.

Section 5.06.060 of the Metropolitan Code of Laws directs MDHA to make periodic assessments of the activities and improvements eligible for tax increment financing under each Redevelopment Plan. MDHA held nine meetings and conducted surveys of the property owners and citizens of Davidson County to gather resident and owner input for priorities in the Redevelopment Districts.

This resolution provides that MDHA has completed an assessment of the activities and improvements for tax increment financing in accordance with Section 5.06.060 of the Metropolitan Code. The priorities in the Central State Redevelopment Plan are: affordable housing; projects directly improving transit infrastructure including greenways and pedestrian ways; all types of public infrastructure; and preservation of historically significant structures.

Pursuant to Section 5.06.060 of the Metropolitan Code of Laws, for an assessment to be complete, the Council must agree on the activities and improvements that are eligible for tax increment financing under the plan. The Council may indicate agreement by the passage of a resolution approved by 21 votes.

**Sponsors:** Bradford, Toombs, Horton and Allen

**57. RS2026-2081**

A Resolution approving the activities and improvements eligible for tax increment financing in the Phillips Jackson Redevelopment Plan.

Analysis

This resolution approves the activities and improvements eligible for tax increment financing in the Phillips Jackson Redevelopment Plan.

The Metropolitan Development and Housing Agency ("MDHA") oversees 11 Redevelopment Districts in Nashville, including the Phillips Jackson Redevelopment Plan.

Section 5.06.060 of the Metropolitan Code of Laws directs MDHA to make periodic assessments of the activities and improvements eligible for tax increment financing under each Redevelopment Plan. MDHA held nine meetings and conducted surveys of the property owners and citizens of Davidson County to gather resident and owner input for priorities in the Redevelopment Districts.

This resolution provides that MDHA has completed an assessment of the activities and improvements for tax increment financing in accordance with Section 5.06.060 of the Metropolitan Code. The priorities in the Phillips Jackson Redevelopment Plan are: affordable



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 12 of 37 PageID #: 104

housing; projects directly improving transit infrastructure including greenways and pedestrian ways; all types of public infrastructure; and preservation of historically significant structures.

Pursuant to Section 5.06.060 of the Metropolitan Code of Laws, for an assessment to be complete, the Council must agree on the activities and improvements that are eligible for tax increment financing under the plan. The Council may indicate agreement by the passage of a resolution approved by 21 votes.

**Sponsors:** Kupin, Toombs, Horton and Allen

**58.** **RS2026-2082**

A Resolution approving the activities and improvements eligible for tax increment financing in the Rutledge Hill Redevelopment Plan.

Analysis

This resolution approves the activities and improvements eligible for tax increment financing in the Rutledge Hill Redevelopment Plan.

The Metropolitan Development and Housing Agency ("MDHA") oversees 11 Redevelopment Districts in Nashville, including the Rutledge Hill Redevelopment Plan.

Section 5.06.060 of the Metropolitan Code of Laws directs MDHA to make periodic assessments of the activities and improvements eligible for tax increment financing under each Redevelopment Plan. MDHA held nine meetings and conducted surveys of the property owners and citizens of Davidson County to gather resident and owner input for priorities in the Redevelopment Districts.

This resolution provides that MDHA has completed an assessment of the activities and improvements for tax increment financing in accordance with Section 5.06.060 of the Metropolitan Code. The priorities in the Rutledge Hill Redevelopment Plan are: affordable housing; projects directly improving transit infrastructure including greenways and pedestrian ways; all types of public infrastructure; and preservation of historically significant structures.

Pursuant to Section 5.06.060 of the Metropolitan Code of Laws, for an assessment to be complete, the Council must agree on the activities and improvements that are eligible for tax increment financing under the plan. The Council may indicate agreement by the passage of a resolution approved by 21 votes.

**Sponsors:** Kupin, Toombs, Horton and Allen

**59.** **RS2026-2083**

A Resolution approving the activities and improvements eligible for tax increment financing in the Skyline Redevelopment Plan.

Analysis

This resolution approves the activities and improvements eligible for tax increment financing in



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 13 of 37 PageID #: 105

the Skyline Redevelopment Plan.

The Metropolitan Development and Housing Agency ("MDHA") oversees 11 Redevelopment Districts in Nashville, including the Skyline Redevelopment Plan.

Section 5.06.060 of the Metropolitan Code of Laws directs MDHA to make periodic assessments of the activities and improvements eligible for tax increment financing under each Redevelopment Plan. MDHA held nine meetings and conducted surveys of the property owners and citizens of Davidson County to gather resident and owner input for priorities in the Redevelopment Districts.

This resolution provides that MDHA has completed an assessment of the activities and improvements for tax increment financing in accordance with Section 5.06.060 of the Metropolitan Code. The priorities in the Skyline Redevelopment Plan are: affordable housing; projects directly improving transit infrastructure including greenways and pedestrian ways; all types of public infrastructure; and preservation of historically significant structures.

Pursuant to Section 5.06.060 of the Metropolitan Code of Laws, for an assessment to be complete, the Council must agree on the activities and improvements that are eligible for tax increment financing under the plan. The Council may indicate agreement by the passage of a resolution approved by 21 votes.

**Sponsors:** Toombs, Horton and Allen

**60.** **RS2026-2084**

A resolution accepting the terms of a cooperative purchasing master agreement with Info-Tech Research Group, Inc. for information technology research and advisory services for the Information Technology Services Department.

Analysis

This resolution accepts the terms of a cooperative purchasing master agreement with Info-Tech Research Group, Inc. for information technology research and advisory services for the Information Technology Services Department.

The original agreement is between the State of North Carolina and Info-Tech Research Group, Inc. The anticipated project value is $500,000. The estimated savings to Metro via this cooperative are $52,571. The agreement would expire on January 18, 2029.

According to the Cooperative Request Review form, the pricing in the cooperative purchase agreement was leveraged from a competitive RFP with 40 offers. The agreement would provide Information technology research, step-by-step methodologies, vendor evaluation matrices, and implementation toolkits. It is unlikely that Metro would obtain a better value through competitive solicitation.

Tennessee Code Annotated § 12-3-1205(b) authorizes local governments to participate in cooperative purchasing agreements with governmental entities outside of the state as long as



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 14 of 37 PageID #: 106

the goods or services were competitively procured by the other governmental entity. Tennessee Code Annotated § 12-3-1205(b) further provides that local governments may participate in a master agreement by adopting a resolution accepting the terms of the master agreement.

*Fiscal Note: According to the Cooperative Request Review from Division of Purchases, the anticipated project value is $500,000. The anticipated savings to Metropolitan Government through utilizing this cooperative purchasing agreement is $52,571.*

**Sponsors:** Toombs and Hill

**61.** **RS2026-2085**

A resolution to approve the First Amendment to a grant contract for constructing affordable housing approved by RS2024-709 between The Metropolitan Government of Nashville and Davidson County, acting by and through the Metropolitan Housing Trust Fund Commission, and Springboard Landings, Inc.

Analysis

This resolution approves the first amendment to a grant contract between the Metropolitan Housing Trust Fund Commission and Springboard Landings, Inc. to construct affordable housing.

Pursuant to Resolution No. RS2024-709, Springboard Landings Inc. was granted $1,491,605 to construct 10 units of affordable housing for rental.

The proposed amendment extends the grant term to 36 months from the execution of the grant agreement.

**Sponsors:** Toombs, Horton, Allen, Gadd, Welsch and Ewing

**62.** **RS2026-2086**

A resolution to approve the First Amendment to a grant contract for constructing affordable housing approved by RS2024-591 between The Metropolitan Government of Nashville and Davidson County, acting by and through the Metropolitan Housing Trust Fund Commission, and The Housing Fund, Inc.

Analysis

This resolution approves the first amendment to a grant contract between the Metropolitan Housing Trust Fund Commission, and The Housing Fund, Inc. to construct affordable housing.

Pursuant to RS2024-591, The Housing Fund, Inc. was granted $760,554 to construct 5 units of affordable housing on Nashville Community Land Trust parcels on 22nd Avenue North, Herman Street, Batavia Street, Maury Street, and Green Street.

The proposed amendment removes references to American Rescue Plan Act (ARPA) funds and extends the term of the contract to end on October 31, 2026.



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 15 of 37 PageID #: 107

**Sponsors:** Toombs, Horton, Allen, Gadd and Welsch

**63.** **RS2026-2087**

A resolution to approve the First Amendment to a grant contract for constructing affordable housing approved by RS2024-709 between The Metropolitan Government of Nashville and Davidson County, acting by and through the Metropolitan Housing Trust Fund Commission, and Habitat for Humanity of Greater Nashville, Samaritan Recovery Community, Inc., Living Development Concepts, Inc., Rebuilding Together Nashville and Tennessee Prison Outreach Ministry, Inc.

Analysis

This resolution approves the first amendment to a grant contract between the Metropolitan Housing Trust Fund Commission and Habitat for Humanity of Greater Nashville, Samaritan Recovery Community, Inc., Living Development Concepts, Inc., Rebuilding Together Nashville and Tennessee Prison Outreach Ministry, Inc. to construct affordable housing. The grant contracts were originally approved pursuant to Resolution No. RS2024-709.

The proposed amendments will extend the term of the contract from 24 months to 36 months.

**Sponsors:** Toombs, Horton, Gadd, Welsch, Gamble and Ewing

**64.** **RS2026-2088**

A resolution accepting an in-kind grant from the Delta Sigma Theta Sorority, Inc. to the Metropolitan Government, acting by and through the Metro Health Department, for socks, gloves, scarves, and hats to supply warm-weather items to persons living with HIV/AIDS served by Ryan White-funded agencies during the winter months.

Analysis

This resolution accepts an in-kind grant from the Delta Sigma Theta Sorority, Inc. to the Metropolitan Public Health Department to provide socks, gloves, scarves, and hats to persons living with HIV/AIDS served by Ryan White-funded agencies during winter months.

The grant award is an estimated value of $600 with no cash match required.

**Sponsors:** Toombs, Huffman, Gadd, Welsch, Bradford, Hill, Gamble and Ewing

**65.** **RS2026-2089**

A resolution appropriating a total of $233,900 from the Metropolitan Government of Nashville and Davidson County, acting by and through the Metropolitan Board of Health, to Street Works dba Today’s Hope to expand an existing syringe service program by providing comprehensive educational services focused on opioid misuse, harm reduction strategies, and safe practices for youth aged 16-25 in Nashville and Davidson County.

Analysis

This resolution appropriates a total of $233,900 from the Metropolitan Board of Health to Street Works d/b/a Today’s Hope to expand a syringe service program in Nashville and Davidson County.



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 16 of 37 PageID #: 108

Today's Hope will use the funds to distribute harm reduction supplies, and to educate youth aged 16-26 on opioid misuse through educational workshops at community centers and higher education institutions. The related grant contract would be effective on July 1, 2026, and end on June 30, 2028.

Tenn. Code Ann. section 7-3-314 authorizes the Metropolitan Government to provide financial assistance to nonprofit organizations. Section 5.04.070 of the Metropolitan Code of Laws provides that the Metropolitan Council may by Resolution appropriate funds for the financial aid of nonprofit organizations. Metropolitan Charter Section 10.014 provides that the Board of Health has the duty to contract for services that will further the program and policies of the Board, subject to confirmation by Metropolitan Council resolution.

**Sponsors:** Toombs, Huffman, Gadd, Gamble and Kupin

**66. RS2026-2090**

A resolution accepting a Child and Adult Care Food Program (CACFP) grant from the Tennessee Department of Human Services to the Metropolitan Government, acting by and through the Metro Parks and Recreation Department, to provide food program services at Kirkpatrick Community Center during June and July 2026.

Analysis

This resolution accepts a Child and Adult Care Food Program Grant from the Tennessee Department of Human Services to the Metropolitan Parks and Recreation Department to provide nutritious meals and snacks for Kirkpatrick Community Center during June and July 2026.

The grant amount is $38,629.50 with no local cash match required. The grant term is effective June 1, 2025.

The Board of Parks and Recreation accepted this grant at its April 7, 2026, meeting.

**Sponsors:** Capp, Toombs, Vo, Allen, Gadd, Welsch, Ewing and Kupin

**67. RS2026-2091**

A resolution accepting a grant from the Nashville Parks Foundation to the Metropolitan Government, acting by and through the Metropolitan Board of Parks and Recreation, to fund improvements at the Elmington Park Playground.

Analysis

This resolution accepts a grant from the Nashville Parks Foundation to the Metropolitan Board of Parks and Recreation in an amount not to exceed $20,000 with no cash match required. The grant will fund improvements at the Elmington Park Playground. Metro Parks will manage work for the project and is responsible for continued maintenance.

The Metropolitan Board of Parks and Recreation accepted this grant at its June 2, 2026, meeting.



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 17 of 37 PageID #: 109

**Sponsors**: Gadd, Toombs, Vo, Allen, Welsch, Hill and Ewing

**68. RS2026-2092**

A resolution accepting an in-kind grant from the Friends of Warner Parks to the Metropolitan Government, acting by and through the Metropolitan Board of Parks and Recreation, to fund the next phase of various improvement projects and programs within Warner Parks.

Analysis

This resolution accepts an in-kind grant from the Friends of Warner Parks to the Metropolitan Board of Parks and Recreation to fund the next phase of improvement projects and programs within Warner Parks. This in-kind grant has an estimated value of $1,285,000 with no cash match required. No funds would be directed to Metro Parks.

The funding would support Warner Parks' BIRD program, SWEAT program, Nature Discovery program, volunteer program, Nature Center operations and support, invasive plant removal, replacement and maintenance of memorial benches and gardens, meadow restoration, stream stabilization, a pedestrian stone bridge, miscellaneous park improvements, and tree plantings.

The Metropolitan Board of Parks and Recreation approved this grant during its June 2, 2026, meeting.

**Sponsors**: Ewing, Toombs, Vo, Allen, Gadd, Welsch and Hill

**69. RS2026-2093**

A resolution accepting an in-kind grant from the Centennial Park Conservancy to the Metropolitan Government, acting by and through the Metropolitan Board of Parks and Recreation, to fund updating the current Concept Plan depicting improvements made to date and the current vision for future revitalization phases for Centennial Park.

Analysis

This resolution accepts an in-kind grant from the Centennial Park Conservancy to the Metropolitan Board of Parks and Recreation ("Metro Parks") to update the current Concept Plan and vision for future revitalization phases for the Centennial Park. The in-kind grant has an estimated value of $82,135 with no cash match required. The project will be paid for directly by Centennial Park Conservancy and managed by Metro Parks. No funds would be directed at Metro Parks.

The Metropolitan Board of Parks and Recreation approved this grant during its June 2, 2026, meeting.

**Sponsors**: Taylor, Toombs, Vo, Allen, Gadd, Welsch, Hill and Ewing

**70. RS2026-2094**

A resolution accepting a grant from Habitat for Humanity of Greater Nashville to the Metropolitan Government, acting by and through the Metropolitan Board of Parks and Recreation, to fund the construction phase of Trinity Hills Park.



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 18 of 37 PageID #: 110

Analysis

This resolution accepts a grant from Habitat for Humanity of Greater Nashville to the Metropolitan board of Parks and Recreation ("Metro Parks") in an amount not to exceed $60,000 with no cash match required. The grant will fund the construction phase of Trinity Hills Park. Metro Parks will manage work on the property.

The Metropolitan Board of Parks and Recreation approved this grant during its June 2, 2026, meeting.

**Sponsors:** Toombs, Vo, Allen, Gadd, Welsch, Hill, Gamble and Ewing

**71. RS2026-2095**

A resolution approving an intergovernmental agreement by and between the Nashville Fire Department, Fire Marshal's Office ("NFD"), and the City of Goodlettsville ("Goodlettsville"), for the provision of construction development plan review and building safety inspection services within the City of Goodlettsville.

Analysis

This resolution approves an intergovernmental agreement between the Nashville Fire Department, Fire Marshal's Office ("NFD") and the City of Goodlettsville ("Goodlettsville") for construction development review and building safety inspection services within Goodlettsville.

Per the agreement, NFD shall conduct fire and life safety inspections and plan reviews for construction and development, limited to new development on the old Rivergate Mall site.

Payments for fire and life safety permits and trade permits shall be the responsibility of the permit applicants. Goodlettsville shall not incur cost for NFD's services, and Goodlettsville shall not receive payment for NFD's services.

The contract would be effective upon approval by all parties and the Metropolitan Council and upon the filing of the agreement with the Metropolitan Clerk. The term of the agreement is 24 months, but NFD and Goodlettsville may extend the term up to 36 months total.

**Sponsors:** Toombs, Huffman and Hill

**72. RS2026-2096**

A resolution approving an application for an Assistance to Firefighters Grant from the U.S. Department of Homeland Security, to the Metropolitan Government, acting by and through the Nashville Fire Department, for funding to purchase new equipment to enhance the decontamination, cleaning, and maintenance of firefighter personal protective equipment (PPE).

Analysis

This resolution approves an application for an Assistance to Firefighters Grant from the U.S. Department of Homeland Security to the Nashville Fire Department to purchase new equipment to enhance the decontamination, cleaning, and maintenance of personal protective



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 19 of 37 PageID #: 111

equipment."

The grant amount is $5,175,000, with a required cash match of $517,500. The term of the grant is effective August 31, 2026, and expires August 31, 2027.

**Sponsors:** Toombs, Huffman, Gadd and Hill

**73. RS2026-2097**

A resolution approving a Memorandum of Understanding entered into by and between the Metropolitan Nashville Police Department, the Metropolitan Transit Authority, and the Regional Transportation Authority, to formalize the operations of dedicated law enforcement services within the public transit system.

Analysis

This resolution approves a memorandum of understanding between the Metropolitan Nashville Police Department ("MNPD") and WeGo Public Transit ("WeGo") to provide dedicated law enforcement services.

MNPD shall provide general police assistance to WeGo. MNPD will provide a captain, sworn officers, sworn supervisors, and support personnel to the transit division and two support personnel to the Community Safety Center. The Transit division will cover transit vehicles, transit routes, WeGo property, and WeGo Stations.

All operating capital and capital transit division expenses shall be charged to Choose How You Move accounts. The costs associated with the transit division are charged to MNPD payroll.

The term of the memorandum of understanding is three years following approval of the agreement by the Metropolitan Council and may be renewed for two successive one-year terms.

**Sponsors:** Toombs, Evans-Segall, Huffman, Hill and Ewing

**74. RS2026-2098**

A resolution approving amendment two to an intergovernmental agreement by and between the Tennessee Department of Transportation ("TDOT") and the Metropolitan Government, acting by and through the Nashville Department of Transportation and Multimodal Infrastructure ("NDOT"), for the Charlotte Avenue/Dr. Martin L. King, Jr. Boulevard Transit Headways and Congestion Management Project. State Project No: 19LPLM-F3-189, Federal Project No: ATCM-REG3(206), PIN 131476.00. (Proposal No. 2024M-036AG-001).

Analysis

This resolution approves the second amendment to an intergovernmental agreement between the Tennessee Department of Transportation ("TDOT") and the Nashville Department of Transportation and Multimodal Infrastructure ("NDOT"), previously approved pursuant to Resolution No. RS2021-1104. The agreement is for the Charlotte Avenue/Dr. Martin L. King, Jr. Boulevard Transit Headways and Congestion Management Project. This project includes the deployment of transit signal priority system, connect vehicle roadside units and onboard



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 20 of 37 PageID #: 112

units, fiber optic communications, digital signage at bus stations, and software systems.

The first amendment impacted cost breakdown and extended the completion date to June 30, 2026. The proposed amendment will extend the project completion date from June 30, 2026, to December 31, 2028.

**Sponsors:** Toombs, Horton, Evans-Segall, Kupin, Taylor, Gadd and Ewing

**75.** **RS2026-2099**

A resolution classifying public roads in Davidson County, Tennessee.

Analysis

This resolution is an annual housekeeping matter required by state law to formally classify all public roads in Davidson County.

By adoption of this resolution, roads and alleys listed on the Official Street and Alley Acceptance and Maintenance Maps approved by Ordinance No. BL2025-1159, under Proposal Number 2026M-001OT-001, and supplemented by the public county road list attached to the resolution, would officially be classified as public roads.

**Sponsors:** Evans-Segall and Ewing

**76.** **RS2026-2100**

A resolution authorizing 2301 12th Avenue, LLC to construct and install an aerial encroachment at 2301 12th Avenue South (Proposal No. 2026M-011EN-001).

Analysis

This resolution authorizes 2301 12th Avenue, LLC to construct, install, and maintain an aerial encroachment at 2301 12th Avenue South. The encroachment is for a blade sign.

The applicant must indemnify the Metropolitan Government from all claims in connection with the construction and maintenance of the encroachment. Prior to receiving a permit, the applicant must file a certificate of public liability insurance $2,000,000 with the Metropolitan Clerk and the Nashville Department of Transportation and Multimodal Infrastructure naming the Metropolitan Government as an insured party.

This resolution must be approved by 21 affirmative votes.

**Sponsors:** Cash, Horton, Evans-Segall and Ewing

**77.** **RS2026-2101**

A resolution authorizing The Aspenwood Company, LLC to construct, install, and maintain an aerial encroachment at 3808 Cleghorn Avenue. (Proposal No. 2026M-018EN-001).

Analysis

This resolution authorizes the Aspenwood Company, LLC, to construct, install, and maintain an



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 21 of 37 PageID #: 113

aerial encroachment at 3808 Cleghorn Avenue. The encroachment is for three wall mounted flags.

The applicant must indemnify the Metropolitan Government from all claims in connection with the construction and maintenance of the encroachment. Prior to receiving a permit, the applicant must file a certificate of public liability insurance $2,000,000 with the Metropolitan Clerk and the Nashville Department of Transportation and Multimodal infrastructure naming the Metropolitan Government as an insured party.

This resolution must be approved by 21 affirmative votes.

**Sponsors:** Preptit, Horton, Evans-Segall and Ewing

**78. RS2026-2102**

A resolution authorizing GD Broadway Nashville LLC to construct, install, and maintain an aerial encroachment at 111 4th Avenue South. (Proposal No. 2026M-019EN-001).

Analysis

This resolution authorizes GD Broadway Nashville LLC to construct, install, and maintain an aerial encroachment at 111 4th Avenue South. The encroachment is for one illuminated projecting sign.

The applicant must indemnify the Metropolitan Government from all claims in connection with the construction and maintenance of the encroachment. Prior to receiving a permit, the applicant must file a certificate of public liability insurance $2,000,000 with the Metropolitan Clerk and the Nashville Department of Transportation and Multimodal infrastructure naming the Metropolitan Government as an insured party.

This resolution must be approved by 21 affirmative votes.

**Sponsors:** Kupin, Horton, Evans-Segall and Ewing

**79. RS2026-2103**

A resolution authorizing Tennessee Football, LLC to construct, install, and maintain aerial encroachments at South Second Street. (Proposal No. 2026M-021EN-001).

Analysis

This resolution authorizes Tennessee Football, LLC to construct, install, and maintain aerial encroachments at South Second Street. The encroachment is for multiple 24-inch banner arms on light poles located along South Second Street, for the purpose of hanging banners.

The applicant must indemnify the Metropolitan Government from all claims in connection with the construction and maintenance of the encroachment. Prior to receiving a permit, the applicant must file a certificate of public liability insurance $2,000,000 with the Metropolitan Clerk and the Nashville Department of Transportation and Multimodal infrastructure naming the Metropolitan Government as an insured party.


Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 22 of 37 PageID #: 114

This resolution must be approved by 21 affirmative votes.

**Sponsors:** Kupin, Horton, Evans-Segall, Hill and Ewing

**80.** **RS2026-2104**

A resolution authorizing 1101 Grundy Property Owner, LLC to construct, install, and maintain an aerial encroachment at 0 Porter Street and 1100B Porter Street. (Proposal No. 2026M-009EN-001).

Analysis

This resolution authorizes 1101 Grundy Property Owner, LLC to construct, install, and maintain an aerial encroachment. The encroachment is an overhanging canopy.

The applicant must indemnify the Metropolitan Government from all claims in connection with the construction and maintenance of the encroachment. Prior to receiving a permit, the applicant must file a certificate of public liability insurance $2,000,000 with the Metropolitan Clerk and the Nashville Department of Transportation and Multimodal infrastructure naming the Metropolitan Government as an insured party.

This resolution must be approved by 21 affirmative votes.

**Sponsors:** Kupin, Horton, Evans-Segall and Ewing

**81.** **RS2026-2105**

A resolution authorizing Nashville Phase III Property Holder LLC to construct, install, and maintain an aerial encroachment at 501 Houston Street. (Proposal No. 2026M-024EN-001).

Analysis

This resolution authorizes Nashville Phase III Property Holder LLC to construct, install, and maintain an aerial encroachment at 501 Houston Street. The encroachment is for a blade sign.

The applicant must indemnify the Metropolitan Government from all claims in connection with the construction and maintenance of the encroachment. Prior to receiving a permit, the applicant must file a certificate of public liability insurance $2,000,000 with the Metropolitan Clerk and the Nashville Department of Transportation and Multimodal infrastructure naming the Metropolitan Government as an insured party.

This resolution must be approved by 21 affirmative votes.

**Sponsors:** Vo, Horton, Evans-Segall and Ewing

**82.** **RS2026-2106**

A resolution authorizing the Metropolitan Department of Law to compromise and settle the personal injury claim of Tina and Robert Bone against the Metropolitan Government of Nashville and Davidson County in the amount of $40,000.00, and that said amount be paid out of the Self-Insured Liability Fund.



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 23 of 37 PageID #: 115

Analysis

On July 1, 2023, Tina Bone and her husband Robert Bone were walking outside of 502 Broadway. Mrs. Bone had just began walking when she tripped on a metal fixture protruding from the sidewalk. She fell on her hands and knees.

Mrs. Bone suffered bilateral wrist injuries including a fractured hamate bone in her right hand, a severe sprain of her left wrist and bruising of her knees. Mrs. Bone filed a claim for medical damages, and Mr. Bone brought a loss of consortium claim.

The parties have participated in settlement negotiations and have agreed upon a settlement amount of $40,000. The department of Law recommends settlement of the. Bones' claims for $40,000.

The metal fixture that Mrs. Bone tripped on has been removed.

*Fiscal Note: The total settlement amount is $40,000. This settlement would be the 28TH payment, after approval by Metropolitan Council, from the Judgment and Losses Fund in FY26 for a cumulative total of $3,430,547. The fund balance would be $12,448,679 after this payment.*

**Sponsors:** Toombs

**83.** **RS2026-2107**

A resolution approving the transfer of control and management of a parcel of property from WeGo Public Transit to the Department of Waste Services and authorizing the Department to make a one-time payment to WeGo Public Transit in the amount of $170,000 on account of such transfer.

Analysis

This resolution approves the transfer of control and management of property at 4016 Andrew Jackson Way from WeGo Public Transit ("WeGo") to the Department of Waste Services ("DWS").

WeGo owns a 1.11-acre property at 4016 Andrew Jackson Way. WeGo does not have any current or planned need for the property. This property was acquired using funds from the Federal Transportation Administration ("FTA"). With concurrence from the FTA, this facility will be transferred to DWS for use as a convenience center. The grant funds will be paid back to the FTA. The facility was appraised at $170,000.

*Fiscal Note: According to the Assessor of Property's website, the appraised value of 4016 Andrew Jackson Way, a 1.11-acre parcel, is $406,100. Metropolitan Government will pay WeGo Public Transit $170,000 for the property.*

**Sponsors:** Toombs, Evans-Segall, Ewing and Huffman



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 24 of 37 PageID #: 116

**84.** **RS2026-2108**

A resolution authorizing the Director of Public Property, or his designee, to exercise option agreements for the purchase of a flood-prone property, located at 5409 Illinois Avenue, for Metro Water Services. (Proposal No. 2026M-004PR-001).

Analysis

The resolution authorizes the Director of Public Property, or his designee, to exercise an option agreement for the purchase of flood-prone property located at 5409 Illinois Avenue for the Department of Water and Sewerage Services.

The option is to acquire a .11-acre property at 5409 Illinois Avenue for a fair market value of $346,000.

Pursuant to Metropolitan Code of Laws section 2.24.250.K, option agreements for the purchase of real property intended for uses other than vehicular right of way may be approved by resolution.

The Planning Commission approved acquisition of these properties at its June 8, 2026, meeting.

*Fiscal Note: According to the Assessor of Property's website, the appraised value of the 0.11-acre parcel located at 5409 Illinois Avenue is $267,600. Metropolitan Government will pay $346,000 for the purchase of the flood prone property and the payment of outstanding taxes.*

**Sponsors:** Horton, Evans-Segall and Ewing

**85.** **RS2026-2109**

A resolution authorizing The Metropolitan Government of Nashville and Davidson County to accept new public sanitary sewer main and sanitary sewer manhole, for property located at 1916 Eastland Avenue (MWS Project No. 26-SL-82 and Proposal No. 2026M-037ES-001).

Analysis

This resolution accepts approximately 54 linear feet of new eight-inch sanitary sewer main (DIP) and one sanitary sewer manhole, for property located at 1916 Eastland Avenue.

Tennessee Code Annotated § 7-35-406(A)(2) and Ordinance No. BL2024-345 allow the Metropolitan Department of Water and Sewerage Services to approve extension, additions, or works by resolution of the Metropolitan Council.

This proposal has been approved by the Planning Commission.

**Sponsors:** Capp, Horton, Evans-Segall and Ewing

**86.** **RS2026-2110**

A resolution authorizing The Metropolitan Government of Nashville and Davidson County to abandon fire hydrant assembly, and to accept new public water main and fire hydrant



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 25 of 37 PageID #: 117

assembly, for property located at 4854 Nolensville Pike, also known as Fairlane Shopping Center (MWS Project No. 26-WL-19, and Proposal No. 2026M-040ES-001).

Analysis

This resolution abandons one fire hydrant assembly and accepts approximately 47 linear feet of new six-inch water main (DIP) and one fire hydrant assembly, for property located at 4854 Nolensville Pike, also known as Fairlane Shopping Center.

Tennessee Code Annotated § 7-35-406(A)(2) and Ordinance No. BL2024-345 allow the Metropolitan Department of Water and Sewerage Services to approve extension, additions, or works by resolution of the Metropolitan Council.

This proposal has been approved by the Planning Commission.

**Sponsors:** Nash, Horton, Evans-Segall and Ewing

**87. RS2026-2111**

A resolution to amend Ordinance No. BL2026-1324 to authorize The Metropolitan Government of Nashville and Davidson County to modify the acceptance of new public water, fire hydrant assemblies, sanitary sewer mains, sewer manholes and easements, for property located at 1410 Dickerson Pike, also known as City Vista II, (MWS Project Nos. 25-WL-36 and 25-SL-86 & Proposal No. 2025M-186ES-002).

Analysis

This resolution amends Ordinance No. BL2026-1324, which was approved by the Metropolitan Council on April 24, 2026. The ordinance accepted approximately 1,139 linear feet of new eight-inch water main (DIP), approximately 1,555 linear feet of new eight-inch sanitary sewer main (PVC), approximately 607 linear feet of new eight-inch sanitary sewer main (DIP), three fire hydrant assemblies, 19 sanitary sewer manholes and easements for property located at Lucil Street (unnumbered), also known as City Vista II.

The proposed resolution would amend BL2026-1324 to accept approximately 72 linear feet of new six-inch water main (DIP), approximately 10 fewer linear feet of new eight-inch water main (DIP), approximately 25 fewer linear feet of new eight-inch sanitary (PVC), approximately 5 fewer linear feet of new eight-inch sanitary sewer main (DIP), and the horizontal adjustment of the water and sanitary sewer main for property now located 1410 Dickerson Pike.

This amendment has been approved by the Planning Commission.

**Sponsors:** Toombs, Horton, Evans-Segall and Ewing

## O. Bills on Second Reading

**130. BL2026-1362**

An ordinance requiring an annual review and an annual presentation to the Budget and Finance Committee of the Metropolitan Council from all boards, commissions, departments, and authorities offering tax abatement incentives.



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 26 of 37 PageID #: 118

Analysis

This ordinance requires an annual review and presentation to the Metropolitan Council's Budget and Finance Committee from the boards, commissions, departments, and authorities offering tax abatement incentives.

Tax incentives such as Tax Increment Financing and Payments in Lieu of Taxes have been used to promote economic development, job creation, construction of affordable housing, and other public goods. As multiple programs utilize future property tax dollars to incentivize public goods, this ordinance would create a periodic review process to evaluate if specific projects are still meeting their intended goals.

Through this ordinance, representatives from the following departments, boards, and commissions would provide an annual joint presentation to the Budget and Finance Committee relative to tax abatement programs: the Department of Finance, the Department of Law, the Metropolitan Planning Commission, the Office of the Metropolitan Trustee and each department, board, or commission administering tax abatements including: Metropolitan Development and Housing Agency ("MDHA"), Industrial Development Board ("IDB"), Health Educational Facilities Board ("HEFB"), Metropolitan Historic Commission ("Metro Historic"), and other agencies who have proposed to administer tax abatements.

The presentation would address the respective tax abatement program's efficacy in achieving its goals, the program's annual financial data, and a list of program priorities that should be considered relative to Metro's evolving needs. The Department of Finance would coordinate the presentation and further report the aggregate amount of tax abatements for the previous year, the appropriateness of that aggregate amount relative to the operating budget of the Metropolitan Government and the community's priorities addressed by the incentives.

**Sponsors:** Allen, Ellis, Evans-Segall, Spain, Suara and Huffman

**131. BL2026-1430**

An ordinance amending Section 2.08.030 of the Metropolitan Code of Laws relative to the publication of the annual operating budget and the capital improvements budget.

Analysis

This ordinance amends Section 2.08.030 of the Metropolitan Code of Laws regarding the publication of supplemental materials for the annual operating budget and the capital improvements budget ("CIB").

The bill requires the Mayor to provide each Council Member with a copy of the recommended operating budget with an executive summary of the budget and descriptive operational and budget information about each department, board, commission, or agency. The executive summary and descriptive operational and budget information are typically included in an "Operating Budget Book" provided by the Department of Finance during the budget process.



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 27 of 37 PageID #: 119

The ordinance also provides a housekeeping update for existing code regarding the CIB. The current code already requires the Mayor to provide each Council Member with a copy of the CIB by May 20 annually. The CIB must include an index to reference each proposed item individually.

**Sponsors:** Bradford, Ellis, Johnston, Evans-Segall, Welsch, Vo, Evans, Huffman and Kupin

**132. BL2026-1431**

An ordinance to amend Chapter 2.147 of the Metropolitan Code of Laws regarding the Nashville Entertainment Commission.

Analysis

This ordinance amends Chapter 2.147 of the Metropolitan Code of Laws regarding the Nashville Entertainment Commission ("the Commission").

The bill would change the organization of the Nashville Entertainment Commission and the selection of its executive director. Current law provides for the Mayor to hire the executive director from a set of candidates recommended by the Commission. The Commission has the explicit duty to select candidates for executive director to be presented to the mayor and may work with the Department of Human Resources to assist with candidate recruitment. The executive director and any staff would be organized with the Commission.

The ordinance would provide for the executive director to be appointed by the Mayor, in consultation with the Commission. The Commission would have the duty to consult with the Mayor about a final selection. The executive director and any additional staff would be organized under the Mayor's Office instead of the Commission. The bill also removes a definition of "Occupations in the entertainment industry."

Provisions of this bill directly conflict with Ordinance No. BL2026-1432, which is also on second reading at the July 7, 2026, meeting. Ordinance No. BL2026-1431 would allow the Mayor to hire the executive director with consultation from the Commission and provide that the executive director and any staff be housed with the Mayor's Office. Ordinance No. BL2026-1432 would allow the Commission to hire the executive director and organize the executive director and staff under them.

Substitute Ordinance No. BL2026-1377, the Chair's Substitute Operating Budget, allocated $300,000 for "Music and Entertainment Economic Development and Film Initiatives." The Director of Finance is authorized to allocate and transfer the appropriation once a law that "modifies the organizational placement of the Nashville Office of Entertainment" is enacted.

**Sponsors:** Vo, Horton, Capp, Benedict, Bradford, Ellis, Gadd, Porterfield, Cash, Hancock, Parker, Weiner, Rutherford, Harrell, Spain, Huffman and Nash

**133. BL2026-1432**

An ordinance amending Chapter 2.147 of the Metropolitan Code of Laws relative to the



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 28 of 37 PageID #: 120

Nashville Entertainment Commission.

Analysis

This ordinance amends Chapter 2.147 of the Metropolitan Code of Laws regarding the Nashville Entertainment Commission ("the Commission").

The bill would change the organization of the Nashville Entertainment Commission and the selection of its executive director. Current law provides for the Mayor to hire the executive director from a set of candidates recommended by the Commission. The Commission has the explicit duty to select candidates for executive director to be presented to the mayor and may work with the Department of Human Resources to assist with candidate recruitment. The executive director and any staff would be organized with the Commission.

The ordinance would provide for the executive director to be appointed Commission with no input from the Mayor. The Commission would have the duty to recruit and hire the executive director. The commission would work with the Department of Human Resources on application and selection process. The commission will conduct interviews for the hiring of an executive director.

Provisions of this bill directly conflict with Ordinance No. BL2026-1432, which is also on second reading at the July 7, 2026, meeting. Ordinance No. BL2026-1431 would allow the Mayor to hire the executive director with consultation from the Commission and provide that the executive director and any staff be housed with the Mayor's Office. Ordinance No. BL2026-1432 would allow the Commission to hire the executive director and organize the executive director and staff under them.

Substitute Ordinance No. BL2026-1377, the Chair's Substitute Operating Budget, allocated $300,000 for "Music and Entertainment Economic Development and Film Initiatives." The Director of Finance is authorized to allocate and transfer the appropriation once a law that "modifies the organizational placement of the Nashville Office of Entertainment" is enacted.

**Sponsors:** Styles, Welsch, Evans, Kupin, Cortese, Hill and Druffel

**134. BL2026-1434**

An ordinance to amend Section 13.20.020 of the Metropolitan Code of Laws relative to required notice and permission for excavations in the right-of-way.

Analysis

This ordinance amends Section 13.20.020 of the Metropolitan Code of Laws relative to required notice and permission for excavations in the right-of-way.

The present code requires that 48 hours' notice be provided before any excavation occurs in any street, road, alley or right-of-way or of any utility or temporary construction easement of the Metropolitan Government or other government entity. That notice must be provided to the occupant of the property abutting a street, road, alley, or right-of-way in which work is to be



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 29 of 37 PageID #: 121

performed; the owner and occupant of the property with the easement in which work is to be performed; all occupants within the block where the work is to be performed; and the district Council Member representing the area. The person holding the excavation permit shall deliver a signed statement to the Nashville Department of Transportation and Multimodal Infrastructure containing the persons notified and the manner of notification prior to start of work.

The ordinance would require seven days' notice prior to the beginning of construction work in the right-of-way. This notice period codifies current Nashville Department of Transportation and Multimodal Infrastructure policy. The bill also reorganized various requirements in the section.

**Sponsors:** Lee and Kupin

**135. BL2026-1435**

An ordinance to amend Title 15 of the Metropolitan Code of Law to remove sections authorizing unmetered water connections.

Analysis

This ordinance amends Title 15 of the Metropolitan Code of Laws to remove sections of the code that authorize unmetered water connections. The Department of Water and Sewerage Services ("MWS") does not permit unmetered water connections.

The ordinance would prohibit new unmetered connections as of July 21, 2026. The MWS director would have the authority to make frequent inspections of all previously approved unmetered connections and connect piping. The MWS director and their employees shall have the right to enter a property when and where any unmetered connections have been made to conduct such an inspection.

In connection with eliminating these new unmetered connections, this ordinance would also eliminate the permitting and regulating structure for new unmetered connections. This includes permit requirements, bond requirements, sworn statements of water use, and penalties for failure to file a bond or statement.

Other existing provisions for unmetered water connections, including automatic sprinkler systems, would be amended to only apply to existing unmetered water connections.

**Sponsors:** Evans-Segall, Welsch and Ewing

**136. BL2026-1436**

An ordinance approving a lease agreement by and between the Metropolitan Government of Nashville and Davidson County acting by and through the Metropolitan Nashville Board of Public Education, and PENCIL Foundation (Proposal No. 2026M-004AG-001).

Analysis

This ordinance approves a lease agreement between the Metropolitan Board of Public Education ("MNPS") and PENCIL Foundation ("PENCIL") for use of part of the property at 3200 Kings Lane, also known as the former Lillard Elementary School, to be used in support of PENCIL's nonprofit mission and community-focused initiatives. The property includes approximately 35,733 square feet of the building and a portion of 11.5 acres of the grounds.



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 30 of 37 PageID #: 122

This lease would allow PENCIL to provide ongoing support of MNPS, which may encompass MNPS programming and services, administrative offices, volunteer coordination, meetings, training, special events, warehouse and storage operations, and community engagement activities.

The term of the lease is effective July 1, 2027, and ends on June 30, 2037. MNPS would grant to PENCIL three separate options to extend the contract by 10 years. Before each option takes effect, MNPS has 30 days to terminate the lease and pay to PENCIL the fair market value of any capital repairs for which PENCIL was not credited.

MNPS will lease the property to PENCIL with the following annual rate:

- 7/1/2027 - 6/30/2028: $324,302.00
- 7/1/2028 - 6/30/2029: $ 334,031.06
- 7/1/2029 - 6/30/2030: $ 344,051.99
- 7/1/2030 - 6/30/2031: $ 354,373.55
- 7/1/2031 - 6/30/2032: $ 365,004.75
- 7/1/2032 - 6/30/2033: $ 375,954.90
- 7/1/2033 - 6/30/2034: $ 387,233.55
- 7/1/2034 - 6/30/2035: $ 398,850.55

However, PENCIL may provide goods and services directly in support of MNPS, which may be applied to 100 percent of the rental rate. These goods and services include the distribution of school supplies, the recruiting of volunteer hours, and fiscal sponsorship of grants to/for MNPS schools or initiatives. PENCIL may also receive a rental credit for capital improvements for which the non-profit makes to the property, including any design, engineering, architectural, or other “soft” costs and expenses. This may be applied to 100 percent of the rental rate.

MNPS is responsible for capital repairs on the property. MNPS is also responsible for grounds maintenance, refuse collection, and utilities.

PENCIL is responsible for custodial services, low voltage services, preventative maintenance, routine maintenance and repairs, tenant improvements, ADA compliance, and building, fire, and zoning codes and regulations. Further, any tenant improvements made by PENCIL during the lease term are subject to approval by MNPS and will revert to MNPS ownership as an integral part of the property upon termination of the lease.

Upon termination of the lease, the property will revert to MNPS. MNPS may terminate the lease for default, bankruptcy, lack of funding, condemnation, or for any reason with 120 days notice.

PENCIL shall maintain general liability insurance with a respective limit of at least $2,000,000 for each occurrence. PENCIL will also maintain worker’s compensation and employer’s liability insurance with a respective limit of at least $1,000,000 for each occurrence. PENCIL must also



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 31 of 37 PageID #: 123

maintain property insurance for full replacement of tenant improvements. PENCIL would indemnify and hold MNPS harmless for any liabilities, damages, or claims against MNPS.

An appraisal report is attached to the ordinance. Any amendment to this lease may be approved by resolution receiving twenty-one votes of the Metropolitan Council.

*Fiscal Note: Metropolitan Nashville Public Schools ("MNPS") will receive the initial annual lease fee of $324,302 from the PENCIL Foundation. The lease fee will increase annually by three percent (3%) after each successive 12-month period. The PENCIL Foundation will be responsible for the utilities, maintenance and repair of the premises.*

**Sponsors:** Toombs, Horton, Welsch, Allen, Ellis, Ewing and Kupin

**137. BL2026-1437**

An ordinance requiring that all boards, commissions, committees, and authorities of the Metropolitan Government with financial authority or a fiduciary duty record and make publicly available the proceedings of their meetings.

Analysis

This ordinance requires that all boards, commissions, committees, and authorities of the Metropolitan Government with financial authority or a fiduciary duty record the proceedings of their meeting and make them publicly available.

The following boards, commissions, and authorities would have their public meetings and work sessions recorded with video or audio:

- Audit Committee,
- Metropolitan Housing Trust Fund,
- Industrial Development Board,
- Health and Education Facilities Board,
- Convention Center Authority,
- Hospital Authority,
- Sports Authority,
- Metropolitan Transit Authority, and
- Any other board, commission, or authority determined by the Director of Finance to exercise direct or advisory authority over the expenditure, allocation, or management of public financial resources, including tax revenues, grants, bonds, and capital investments.

Recordings of these public meetings would be published within 72 hours of the meeting's conclusion, either on the official website of the Metropolitan Government or the responsible department or agency or on a publicly accessible video hosting platform.

The Office of the Metropolitan Clerk, in coordination with the Department of Information Technology Services, would be required to maintain a centralized public portal to access all



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 32 of 37 PageID #: 124

applicable recordings.

This ordinance would take effect 60 days after its final passage.

**Sponsors:** Webb, Kupin, Evans, Bradford, Allen and Ellis

**138.** **BL2026-1439**

An ordinance approving a greenway conservation easement between the Metropolitan Government of Nashville and Davidson County, through the Metropolitan Board of Parks and Recreation, and Harpeth Overlook Partners, LLC, for greenway improvements at 0 McCrory Lane (Parcel No. 12600015500) (Proposal No. 2026M-018AG-001).

Analysis

This ordinance accepts a greenway conservation easement for property located at 0 McCrory Lane, owned by Harpeth Overlook Partners, LLC. The easement contains approximately 2.4 acres.

Pursuant to Tennessee Code Annotated section 66-9-305 and Metropolitan Charter section 2.01, the Metropolitan Government may accept donations of property interests for the purpose of establishing greenways and providing the public with recreational opportunities in natural areas.

This ordinance has been approved by the Planning Commission. The Metropolitan Board of Parks and Recreation approved this greenway conservation easement at its January 6, 2026, meeting.

*Fiscal Note: There is no cost to Metro to acquire this conservation easement.*

**Sponsors:** Spain, Toombs, Horton, Evans-Segall, Vo, Welsch, Allen, Ewing and Hill

**139.** **BL2026-1440**

An ordinance approving a greenway conservation easement between the Metropolitan Government of Nashville and Davidson County, through the Metropolitan Board of Parks and Recreation, and Whites Creek Landco, LLC, for greenway improvements at 4880 Whites Creek Pike, 4870 Whites Creek Pike, 4860 Whites Creek Pike, and 4840 Whites Creek Pike (Parcels No. 03000027200, 03000027400, 03000027500, and 03000027600, respectively) (Proposal No. 2026M-017AG-001).

Analysis

This ordinance accepts a greenway conservation easement for property located at 4880 Whites Creek Pike, 4870 Whites Creek Pike, 4860 Whites Creek Pike, and 4840 Whites Creek Pike, owned by White's Creek Landco, LLC. The easement contains approximately 2.04 acres.

Pursuant to Tennessee Code Annotated section 66-9-305 and Metropolitan Charter section 2.01, the Metropolitan Government may accept donations of property interests for the purpose of establishing greenways and providing the public with recreational opportunities in natural areas.



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 33 of 37 PageID #: 125

This ordinance has been approved by the Planning Commission. The Metropolitan Board of Parks and Recreation approved this greenway conservation easement at its January 6, 2026, meeting.

*Fiscal Note: There is no cost to Metro to acquire this conservation easement.*

**Sponsors:** Kimbrough, Toombs, Horton, Evans-Segall, Vo, Welsch, Allen and Ewing

**140. BL2026-1441**

An ordinance approving a greenway conservation easement between the Metropolitan Government of Nashville and Davidson County, through the Metropolitan Board of Parks and Recreation, and Century Communities of Tennessee, LLC, for greenway improvements at 6419 Holt Road (Parcel No. 18100009400) (Proposal No.2026M-020AG-001).

Analysis

This ordinance accepts a greenway conservation easement for property located at 6419 Holt Road, owned by Century Communities of Tennessee, LLC. The easement contains approximately 13.79 acres.

Pursuant to Tennessee Code Annotated section 66-9-305 and Metropolitan Charter section 2.01, the Metropolitan Government may accept donations of property interests for the purpose of establishing greenways and providing the public with recreational opportunities in natural areas.

This ordinance has been approved by the Planning Commission. The Metropolitan Board of Parks and Recreation approved this greenway conservation easement at its April 7, 2026, meeting.

*Fiscal Note: There is no cost to Metro to acquire this conservation easement.*

**Sponsors:** Cortese, Toombs, Horton, Evans-Segall, Vo, Welsch, Ewing and Hill

**141. BL2026-1442**

An ordinance approving amendment two to a contract between the Metropolitan Government of Nashville and Davidson County and Waste Management, Inc. of Tennessee, for the provision of solid waste collection and collection of carts.

Analysis

This ordinance approves the second amendment to a contract between the Metropolitan Government and Waste Management, Inc. of Tennessee, for the provision of solid waste collection and collection of carts.

The Metropolitan Council first approved this contract by Resolution No. RS2022-1540. The original contract provided for one per week waste collection for four Metro trash routes per day for a total of 20 routes per week, serving approximately 14,100 customers per week. The



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 34 of 37 PageID #: 126

original estimated contract value was $7,500,000.

The first amendment, as approved by Resolution No. RS2023-2326, increased the contract value by $32,500,000, from $7,500,000 to $40,000,000. This amendment reflected an additional 50 routes that are being permanently moved to be serviced by WM.

The proposed contract amendment extends the contract term by 60 months to 120 months. If approved, the contract term would end on May 17, 2032. Metropolitan Code of Laws Section 4.12.160(B) requires Council approval of contracts for supplies or services "with terms exceeding a period of sixty months, either initially or by virtue of amendments, renewals or extensions thereof."

The proposed amendment also would increase the contract value by $60,500,000, from $40,000,000 to $100,500,000. The contract amendment would also provide for annual escalation/de-escalation adjustments starting July 1, 2027. A new scope of work and pricing and rates would be included to reflect new pricing and collection schedules. The proposed amendment also removes the requirement for a RFQ, project name, or project description to appear on a certificate of insurance and adds language regarding the boycott of Israel, as required by state law.

*Fiscal Note: This amendment to contract number 6510020 with Waste Management, Inc. for residential collection services will increase the contract value by $60,500,000, bringing the previous estimated contract value of $ $40,000,000 to a new total of $100,500,000 be paid from Fund 30501, Cost Centers 1072803100 and 65803100. However, actual expenses may be paid from various departments' funds and cost centers when purchase orders are issued.*

**Sponsors:** Toombs, Evans-Segall and Allen

**142.** **BL2026-1443**

An ordinance to amend Resolution RS2025-1474 to authorize The Metropolitan Government of Nashville and Davidson County to modify the abandonment and acceptance of new public water and sanitary sewer mains, fire hydrant assemblies, sanitary sewer manholes and include easements, for property located at 5047 John Hagar Road, also known as Kingsley Park Phase 1, Revision 1 (MWS Project Nos. 23-WL-39 and 23-SL-91 and Proposal No. 2025M-132ES-002).

Analysis

This ordinance amends Resolution No. RS2025-1474, which was approved by the Metropolitan Council on September 3, 2025. The resolution authorized the abandonment of approximately 75 linear feet of existing eight-inch sanitary sewer main (PVC), one fire hydrant assembly and one sanitary sewer manhole, and the acceptance of approximately 2,473 linear feet of new eight-inch water main, approximately 2,296 linear feet of new eight-inch sanitary sewer main (DIP), approximately 1,829 linear feet of new eight-inch sanitary sewer main (PVC), five fire hydrants assemblies and 30 sanitary sewer manholes, for property located at 5047 John Hagar Road, also known as Kingsley Park.

The proposed ordinance would amend Resolution No. RS2025-1474, abandon easements and



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 35 of 37 PageID #: 127

accept approximately 2,073 fewer linear feet of new eight-inch water main, approximately 1,825 fewer linear feet of new eight-inch sanitary sewer main (DIP), approximately 814 fewer linear feet of new eight-inch sanitary sewer main (PVC), four fewer fire hydrant assemblies 18 fewer sanitary sewer manholes and easements and the addition of phasing. As Resolution No RS2025-1474 did not provide for easements to be abandoned or accepted, the amendment to the resolution must be approved by ordinance.

This amendment has been approved by the Planning Commission.

**Sponsors:** Evans, Horton and Evans-Segall

**143.** **BL2026-1444**

An ordinance authorizing The Metropolitan Government of Nashville and Davidson County to accept new public water and sanitary sewer mains, fire hydrant assemblies, sanitary sewer manholes and easements, for two properties located at 5047 John Hagar Road and John Hagar Road (unnumbered), also known as Kingsley Park Phase 2 (MWS Project Nos. 26-WL-17 and 26-SL-54 and Proposal No. 2026M-034ES-001).

Analysis

This ordinance accepts approximately 2,073 linear feet of new eight-inch water main (DIP), approximately 1,825 linear feet of new eight-inch sanitary sewer main (DIP), approximately 814 linear feet of new eight-inch sanitary sewer main (PVC), four fire hydrant assemblies, 18 sanitary sewer manholes and easements, for two properties located at 5047 John Hagar Road and John Hagar Road (unnumbered), also known as Kingsley Park Phase 2.

This ordinance has been approved by the Planning Commission. Future amendments to this ordinance may be approved by resolution.

**Sponsors:** Evans, Horton and Evans-Segall

## P. Bills on Third Reading

**144.** **BL2026-1393**

An ordinance authorizing ECG East Bank, LP to construct and install aerial, aboveground, and underground encroachments at 501 South 2nd Street. (Proposal No. 2026M-010EN-001).

Analysis

This ordinance authorizes applicant ECG East Bank, LP to construct, install, and maintain aerial, aboveground, and underground encroachments at 501 South 2nd Street. These encroachments are for an awning overhang, irrigation lines, private planters, bike racks and seating, all encroaching into the public right-of-way at 501 South 2nd Street.

The applicant must indemnify the Metropolitan Government from all claims in connection with the construction and maintenance of the encroachments. 616 Ewing Partners must furnish to the Metropolitan Government a certificate of public liability insurance in the amount of



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 36 of 37 PageID #: 128

$4,000,000 in aggregate, naming the Metropolitan Government as an insured party for the payment of any judgement had on any claim made for actions or causes of action arising out of or connected with the construction or installation of the encroachment. The authority granted by this ordinance will not be effective until the certificate of insurance is filed with the metropolitan Clerk and the Nashville Department of Transportation and Multimodal infrastructure.

Metropolitan Code of Laws § 13.08.030 allows the Metropolitan Council to grant encroachments, permits, or privileges to construct, install, operate and/or maintain an encroachment in, on, over, or under any street, road, alley, sidewalk, or other public way by ordinance.

This ordinance has been approved by the Planning Commission.

**Sponsors:** Kupin, Horton and Evans-Segall

**145. BL2026-1394**

An ordinance authorizing The Metropolitan Government of Nashville and Davidson County to accept new public water and sanitary sewer mains, fire hydrant assemblies, sanitary sewer manholes and easements, for property located at 14656 Old Hickory Boulevard, also known as Cothern Properties Phase 1 (MWS Project Nos. 25-WL-4 and 25-SL-7 and Proposal No. 2026M-028ES-001).

Analysis

This ordinance accepts accept approximately 191 linear feet of new six-inch water main (DIP), approximately 3,075 linear feet of new eight-inch water main (DIP), approximately 2,224 linear feet of new eight-inch sanitary sewer main (PVC), approximately 1,801 linear feet of new eight-inch sanitary sewer main (DIP), approximately 306 linear feet of new 14-inch sanitary sewer main (DIP), six fire hydrant assemblies, 23 sanitary sewer manholes and easements, for property located at 14656 Old Hickory Boulevard, also known as Cothern Properties Phase 1.

This ordinance has been approved by the Planning Commission. Future amendments to this ordinance may be approved by resolution.

**Sponsors:** Rutherford, Horton and Evans-Segall



Case 3:26-cv-01143 Document 12-11 Filed 08/15/26 Page 37 of 37 PageID #: 129